ROBERT F. WAGNER, PLAINTIFF-APPELLANT, v. STATE OF NEW JERSEY, DIVISION OF MOTOR VEHICLES, AND NED J. PARSEKIAN, ACTING DIRECTOR, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division .

Argued February 25, 1963—Decided April 5, 1963.

Before Judges GOLDMANN, FREUND and FOLEY.

*Mr. John J. Connell* argued the cause for appellant.

*Mr. Paul Levy,* Deputy Attorney General argued the cause for respondents (*Mr. Arthur J. Sills,* Attorney General, attorney; *Mr. Peter J. Cascone, Jr.,* on the brief).

The opinion of the court was delivered by

FOLEY, J. A. D.  Plaintiff appeals from a decision of the Acting Director of the Division of Motor Vehicles denying his application for renewal of a vehicle identification card granting him special parking privileges pursuant to *N. J. S. A.* 39:4-204 *et seq.*

Plaintiff, 49 years of age, is employed by the Division of Motor Vehicles in Trenton as a hearing examiner.  He resides in Hopewell, New Jersey.  He commutes by automobile to and from his place of employment, and is often required to walk a considerable distance from a parking area to his office.

In 1950 the then Director of the Division of Motor Vehicles granted plaintiff a special vehicle identification card under *N. J. S. A.* 39:4-204 *et seq.,* as a person "otherwise disabled in any manner rendering it difficult and burdensome for him to walk."  The card was issued on the basis of a medical disability discharge from service in the United States Army during World War II, his disability being described as *pes planus* third degree, more commonly known as flat feet.  The permit was renewed annually by the Director until May 1961.

On June 15, 1959 defendant acting Director issued a directive interpreting the statutory phrase "has been otherwise disabled in any manner rendering it difficult and burdensome to walk" to mean that "the difficulty and burdensomeness caused by the physical disability shall be equivalent to that experienced by a person with an amputation of a leg or an arm, two legs or two arms, or any combination thereof."  This definitive interpretation was based on the provisions of *N. J. S. A.* 39:4-204 fixing the classes of persons entitled to special vehicle identification cards as follows:

"The word 'amputee' as employed herein shall include any person, male or female, who has sustained an amputation of either or both legs, or of parts of either or both legs, or of either or both arms, or parts of either or both arms, or who has been otherwise disabled in any manner rendering it difficult and burdensome for him to walk."

The directive of June 15, 1959 ordered a revision of the form of application for the card, and required applicants to be examined by a medical doctor chosen by the Division before the application would be considered. The application form was revised in conformity with the directive.

On March 29, 1961 the Acting Director promulgated a regulation requiring, in the discretion of the Director, that the applicant for a renewal submit a statement from a registered physician of this State, recertifying qualification for the card. On November 29, 1961 the Attorney General issued Formal Opinion No. 31 confirming the legality of the Acting Director's interpretation of the statute, as above recited.

On October 13, 1961 plaintiff filed an application for renewal of his card on the form provided by the Division, which contained a certification by Dr. Myron Bash that he had examined plaintiff on October 2, 1961, and found that he suffered from flat feet third degree, a disability that rendered it difficult and burdensome for him to walk. Since plaintiff was not an amputee, the doctor certified further "that the disability above affects the applicant's ability to walk to at least the same degree as that experienced by an amputee."

When, by November 3, 1961, the application had not been acted on by defendants, plaintiff commenced an action in lieu of prerogative writs to compel the issuance of the card to him. While the suit was pending, plaintiff, at the request of defendants, submitted to a physical examination by Dr. Paul J. Finegan, who reported that he found plaintiff to be "in good health with sole disability limited to both lower extremities. Examination shows him to have a third degree flat foot which is correctable by proper support. He is wearing unsatisfactory shoes with metal arch supports which do not fit him or give him proper support."

After issue was joined, the Law Division dismissed the action without prejudice—evidently upon the ground that plaintiff had failed to exhaust his administrative remedies—and remanded the matter to the Division of Motor Vehicles for a hearing. On January 31, 1962 the hearing was held before the Acting Director, on stipulation of facts and argument of counsel, and resulted in the denial of plaintiff's application. The stipulation contained the findings of Dr. Bash and Dr. Finegan. In his decision, the Acting Director stated:

"It appears from the examinations by both Doctor Finegan and Doctor Bash that the plaintiff is suffering from flat feet, third degree. It also appears quite clear from a report of Doctor Finegan that the condition is correctable and the discomfort experienced by the plaintiff could be alleviated with proper support by metal arches and shoes. In addition, I have observed Mr. Wagner on many occasions during the working day at the Division of Motor Vehicles offices and note he is agile of foot and walks about the building and up and down stairs with no apparent hesitation of gait and no apparent discomfort."

and concluded:

"It is my finding, based upon the medical reports received in evidence and upon my personal observations of Mr. Wagner's ability to walk, that he does not come within the standards of eligibility for a special parking permit as outlined in the statute and as interpreted by the Director of the Division of Motor Vehicles in the memorandum of June 15, 1959."

This appeal followed.

During its pendency this court granted leave to defendants to supplement the record by additional reports of medical examinations. Pursuant thereto, and at defendants' instance, plaintiff was examined by Dr. John J. Flanagan on October 29, 1962, Dr. Flanagan reported as follows:

"This patient was born with congenital flat feet, or third degree Pes Planus. From an objective or clinical standpoint, they present no disability. In my opinion, he can walk over any average distance up to one mile without developing any impairment of function, as far as the feet and legs are concerned.

From an orthopedic standpoint, I see no medical reason or indication for any special consideration, as far as function of the feet and legs are concerned."

On November 21, 1962, at the request of his attorney, plaintiff was re-examined by Dr. Bash. The doctor reported that X-rays showed early signs of stress in the metatarsal joints and that plaintiff has "an excessory navicular bone on the right foot and a very large prominent navicular bone on the left foot." However, Dr. Bash went on to say:

"In so much as it has been recorded that I signed a statement to the effect that he found it 'as difficult and burdensome to walk as to the same degree as that experienced by an amputee,' I would like to make it clear that I do not believe that this is actually so; and I never really did intend to give that impression. Originally when I signed his application to the extent that he had flat feet and found it difficult to walk, this was the extent of my certification. The patient pointed out that according to the interpretation of the law it was the same as implying the difficulty of an amputee, so that on that basis—(misunderstanding on my part apparently) the application was signed."

Thereafter, we remanded the case to the Acting Director with the direction that he make supplemental findings and conclusions in light of the additional medical reports. We also ordered that he submit to cross-examination if he desired "to refer to and rely upon his personal observations" of plaintiff's physical condition.

In the findings and conclusions which followed, the Acting Director stated that he had excluded from consideration the personal observations to which he had adverted in his earlier decision. However, on the basis of the remainder of such decision, the report of Dr. Flanagan, and Dr. Bash's statement that he did not believe plaintiff found it as difficult and burdensome to walk to the same degree as would be experienced by an amputee, the Acting Director again concluded that plaintiff did not "come within the standards of eligibility for a special parking permit as outlined in the statute and as interpreted by the Director of the Division of Motor

Vehicles in the memorandum of June 15, 1959." Accordingly, he denied plaintiff's application.

On this appeal plaintiff challenges the legal soundness of the Acting Director's interpretation of the statute and the Attorney General's confirming opinion of November 29, 1961; the right of the Acting Director to deny an application for a renewal of a permit, and the factual support for the conclusions reached.

The specific infirmity in the statutory interpretation adopted by the Acting Director, alleged by plaintiff, is that the Acting Director equated the statutory language "or one who has been otherwise disabled in any manner rendering it difficult and burdensome for him to walk," to the same difficulty and burden as would be experienced by a leg amputee.

██ *N. J. S. A.* 39:4–204, as originally enacted by *L.* 1949, *c.* 280, applied only to a person whose leg or legs had been partly or wholly amputated, or who had otherwise been disabled in any manner rendering it difficult and burdensome for him to walk. As amended by *L.* 1950, *c.* 191, the "amputee" status was extended to persons who suffered an amputation of all, or parts of, either, or both arms. The statement of purpose attached to the bill was "to enlarge the definition of the word 'amputee' so that persons other than leg amputees who are disabled to a similar extent by amputation of other limbs may enjoy the privileges and provisions heretofore conferred only on leg amputees."

Having in mind that the basic objective of the Legislature was to aid those laboring under the grave disability which attends amputation, we are satisfied that disability of the lower limbs other than amputation was intended to include only such disability as would be similar to or would approximate disablement by reason of amputation.

██ Applying this standard to the facts of this case, and more particularly to the findings and conclusions of all of the doctors, it is clear that the Acting Director's conclusion was substantially supported. In *Cooley's, etc., Foundation v.*

*Legalized Games, etc., Com.*, 78 *N. J. Super.* 128, 138 (*App. Div.* 1963), certif. denied 39 *N. J.* (1963), we recently restated the established rule that factual determinations of an administrative agency will generally be sustained if they are supported by "substantial evidence," *i. e.*, such evidence as a reasonable mind might accept as adequate to support the conclusion reached, or furnish a reasonable basis for the action taken.

■ Finally, we cannot agree that when a permit is granted by the Director of the Division of Motor Vehicles pursuant to *N. J. S. A.* 39:4–204 *et seq.*, subsequent yearly renewals involve purely ministerial action. The permit authorized by the statute is a privilege in which the holder has no vested interest. The statute charges the Director with a duty to issue such permit only to those persons who are qualified to hold it. If a permit were granted by inadvertence, or by a mistake in interpretation of the law by a predecessor Director, it would make no sense to require the incumbent Director to perpetuate such inadvertence or mistake.

The decision of the Acting Director is affirmed.